**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **MICHAEL JAMES CARSON,** | ) | |
| **ID # 1753658,** | ) | |
| **Plaintiff,** | ) | |
| **vs.** | ) | **No. 3:13-CV-0678-K-BH** |
| | ) | |
| **DALLAS COUNTY JAIL, et al.,** | ) | |
| **Defendants.** | ) | **Referred to U.S. Magistrate Judge** |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION**

Pursuant to *Special Order 3-251*, this case has been automatically referred for pretrial management.  Based on the relevant filings and applicable law, the complaint should be **DISMISSED** as frivolous.

**I.  BACKGROUND**

Plaintiff brings this action under 42 U.S.C. § 1983 against Dallas County Sheriff Lupe Valdez (Sheriff), the Dallas County jail (Jail), Dallas County (County), the chief medical officer of the Dallas County jail (CMO), the warden of the Dallas County jail (Warden), a county doctor (Doctor), a county doctor's assistant (Assistant), and the nurses on duty (Nurses) for the time period from April 7, 2011 through May 7, 2011, all in their official and individual capacities.  (Complaint (Compl.) at 3; Magistrate Judge's Questionnaire Answer[1] (MJQ Ans.) 1).  He asserts that, on April 5, 2011, he informed a nurse that he had "a bite of some sort" on his back and that he was allergic to penicillin.  (Compl. at 4.)  On April 7, 2011, the doctor prescribed him a penicillin-based antibiotic for a possible staph infection without acknowledging his allergy.  As a result, he had a painful allergic reaction, that including blisters all over his body, swollen lips, difficulty breathing,

---

[1] Plaintiff's answers to the questions in the MJQ constitute an amendment to the complaint. *See Macias v. Raul A. (Unknown), Badge No. 153,* 23 F.3d 94, 97 (5th Cir. 1994).

and itching.  He stopped taking the medication on April 9, 2011, but the allergic reaction lasted for several days, until he was prescribed Benadryl and a different antibiotic for the initial infection.  The side effects from the reaction lingered for three weeks. (Compl. at 4, 10-11; MJQ Ans. 1, 3).  He seeks monetary damages.  (MJQ Ans. 5).

## II.  PRELIMINARY SCREENING

Plaintiff is an inmate in the Texas Department of Criminal Justice who has been permitted to proceed *in forma pauperis*.  As a prisoner seeking redress from an officer or employee of a governmental entity, his complaint is subject to preliminary screening pursuant to 28 U.S.C. § 1915A.  *See Martin v. Scott*, 156 F.3d 578, 579-80 (5th Cir. 1998) (per curiam).  Because he is proceeding *in forma pauperis*, his complaint is also subject to screening under § 1915(e)(2).  Both § 1915(e)(2)(B) and § 1915A(b) provide for *sua sponte* dismissal of the complaint, or any portion thereof, if the Court finds it is frivolous or malicious, if it fails to state a claim upon which relief may be granted, or if it seeks monetary relief against a defendant who is immune from such relief.

A complaint is frivolous when it "lacks an arguable basis either in law or in fact."  *Neitzke v. Williams*, 490 U.S. 319, 325 (1989).  A claim lacks an arguable basis in law when it is "based on an indisputably meritless legal theory."  *Id.* at 327.  A complaint fails to state a claim upon which relief may be granted when it fails to plead "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *accord Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009).

## III.  SECTION 1983

Plaintiff seeks monetary damages under 42 U.S.C. § 1983.  That section "provides a federal cause of action for the deprivation, under color of law, of a citizen's 'rights, privileges, or immun-

ities secured by the Constitution and laws' of the United States" and "afford[s] redress for violations of federal statutes, as well as of constitutional norms." *Livadas v. Bradshaw*, 512 U.S. 107, 132 (1994).  To state a claim under § 1983, Plaintiff must allege facts that show (1) he has been deprived of a right secured by the Constitution and the laws of the United States; and (2) the deprivation occurred under color of state law.  *See Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 155 (1978); *Cornish v. Corr. Servs. Corp.*, 402 F.3d 545, 549 (5th Cir. 2005).

## A.  <u>Non-Jural Entity</u>

To the extent that Plaintiff sues the Jail,[2] it is a non-jural entity that is not subject to suit under § 1983.  *Williams v. City of Dallas Police Dep't*, No. 3:09-CV-0275-P, 2009 WL 812239, at *2 (N.D. Tex. Mar. 26, 2009) (accepting recommendation of Mag. J.); *Searcy v. Cooper*, No. 3:01-CV-0112-D, 2001 WL 435071, at *3 (N.D. Tex. Apr. 20, 2001) (recommendation of Mag. J.), *accepted by* unpub. order (N.D. Tex. May 15, 2001).  Any claims against the Jail should be dismissed.

## B.  <u>Supervisor Liability</u>

Plaintiff sues the Sheriff, the Warden, and the CMO in their individual capacities based on the actions of the medical staff who work at the Jail.  Supervisory officials cannot be held liable for the unconstitutional actions of their subordinates based on any theory of vicarious or respondeat superior liability.  *See Estate of Davis ex rel. McCully v. City of North Richmond Hills*, 406 F.3d 375, 381 (5th Cir. 2005).   In order to prevail against a supervisor under § 1983, a plaintiff must show that: 1) the supervisor's conduct directly caused a constitutional violation; or 2) that the supervisor was "deliberately indifferent" to a violation of a constitutional right.  *Breaux v. City of*

---

[2]  The MJQ specifically advised Plaintiff that the Jail is a non-jural entity and gave him an opportunity to amend his complaint to add additional defendants.  He named Dallas County as a defendant. (MJQ Ans. 2).

*Garland*, 205 F.3d 150, 161 (5th Cir. 2000).  The acts of a subordinate "trigger no individual § 1983 liability."  *Champagne v. Jefferson Parish Sheriff's Office*, 188 F.3d 312, 314 (5th Cir. 1999).  There must be some showing of personal involvement by a particular individual defendant to prevail against such individual.  *Id.*  A plaintiff cannot make generalized allegations. *Howard v. Fortenberry,* 723 F.2d 1206 (5th Cir.1984).

Here, Plaintiff does not allege that the Sheriff, the Warden, or the CMO had any involvement in the medical staff's alleged action or inaction.  He sues these individuals for "allowing employee's [sic] to give below acceptable standard of care" (MJQ, Ans. 1), and for being "legally responsible for the overall operations of medical staffing and officials." (Compl. at 3).  Any claim against these individuals arising from any action or inaction is based solely on their supervisory roles.  Plaintiff fails to state a plausible claim against the Sheriff, the Warden, or the CMO in their individual capacities, and the claims against them should be dismissed.

## C.  Medical Staff

Plaintiff also sues the Doctor, the Assistant, and the Nurses on duty at the Jail from April 7, 2011 to May 7, 2011, in their individual capacities.  (MJQ Ans. 1).  He asserts that the Doctor prescribed a "known allergic chemical" either because the nurse who Plaintiff told about the allergy did not keep proper records, the Doctor neglected to look at the record, or the Doctor neglected to determine whether the antibiotic prescribed was one that would cause an allergic reaction.  He also claims that the Doctor failed to instruct Plaintiff on what to do in the event of an allergic reaction. (MJQ Ans. 1).  Plaintiff asserts that the Assistant failed to "provide timely, adequate, and/or proper medical treatment." (Compl. at 3).  He asserts that the Nurses failed to provide access to a doctor for treatment of the allergic reaction and prolonged his suffering by delaying treatment.  (MJQ Ans.

1).  Finally, he asserts that the medical staff shielded themselves from liability because he was transferred after he filed a grievance.  *Id.*

The Constitution requires humane conditions of confinement, which includes the receipt of adequate medical care.  *Farmer v. Brennan*, 511 U.S. 825, 832 (1994).  Prison officials violate this requirement only when (1) the deprivation is objectively and sufficiently serious such that the act or omission results in the denial of "the minimal civilized measure of life's necessities" and (2) the official had a culpable state of mind.  *Id.* at 834 (citations omitted).  The objective component requires deprivation of a sufficiently serious medical need "[b]ecause society does not expect that prisoners will have unqualified access to health care."  *Hudson v. McMillian*, 503 U.S. 1, 9 (1992).  To satisfy the second component, the officials must be deliberately indifferent "to a substantial risk of serious harm to an inmate."  *Farmer*, 511 U.S. at 828.  This state of mind requires more than negligence but less than intent to cause harm or knowledge that harm will result from the acts or omissions.  *Id.* at 835.  An official is deliberately indifferent when he "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."  *Id.* at 837.

This state of mind "is an extremely high standard to meet."  *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006) (citations and internal quotation marks omitted).  An inmate must show that prison personnel "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evidence a wanton disregard for any serious medical needs."  *Domino v. Tex. Dep't Crim. J.*, 239 F.3d 752, 756 (5th Cir. 2001) (quoting *Johnson v. Treen*, 759 F.2d 1236, 1238 (5th Cir. 1985)).

1. **Doctor**

Plaintiff alleges that on April 7, 2011, the Doctor prescribed a penicillin-based medication as treatment for a possible staph infection, after Plaintiff had informed a nurse on April 5th that he was allergic to penicillin. (Compl. at 8).  The following day, Plaintiff developed blisters all over his body, his skin burned and itched, his lips became swollen and purple, and he had trouble breathing. (Compl. at 8).  Plaintiff stopped taking the medication on April 9th, but he did not receive any medication for the allergic reaction or different medication for the staph infection until after April 11th, when he decided to file a grievance and asked for information about the medication he had been taking. (Compl. at 10-11; MJQ Ans. 3).  Even after he received new medication for the staph infection and Benadryl for the allergic reaction, he still had the side effects from the allergic reaction for three weeks. (MJQ Ans. 3).  He also contends that the Doctor did not inform him what to do in the event of an allergic reaction to the medicine.  (MJQ Ans. 1).

Plaintiff's claims against the Doctor regarding the medical care he received do not rise to the level of deliberate indifference because he does not allege the Doctor intentionally treated him incorrectly, refused to treat him, or ignored his complaints.  He instead alleges that either the nurse failed to record his allergy correctly, the Doctor neglected to look at the record, or the Doctor neglected to determine whether the prescribed antibiotic would cause an allergic reaction.  Plaintiff also alleges that the Doctor failed to inform him of what to do if a reaction occurred.  At most, Plaintiff has alleged malpractice.  Courts have recognized that a prison doctor can show deliberate indifference in his response to a prisoner's needs, including prescribing penicillin knowing that the prisoner was allergic, and then refusing to treat the reaction.  *See Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976), *citing Thomas v. Pate*, 493 F.2d 151, 158 (7th Cir.), *cert. denied sub nom., Thomas*

*v. Cannon*, 419 U.S. 879 (1974). Plaintiff does not make this allegation, however. There is no allegation that the Doctor knew of Plaintiff's allergy and disregarded it, and there is no allegation that the Doctor had any involvement with his medical treatment after he was initially prescribed the antibiotic. Plaintiff therefore has not stated a constitutional violation by the Doctor. *Johnson v. Treen*, 759 F.2d at 1238. *See also Green v. Ross*, 398 Fed. App'x 2, *2 (5th Cir. Sept. 2, 2010) (holding that allegations that a nurse negligently and carelessly gave the plaintiff the wrong medication were properly dismissed where there was no allegation that the nurse intentionally treated him incorrectly or that he suffered any injury from the alleged mistreatment); *Nunley v. Mills*, 217 Fed. App'x 322, *324 (5th Cir. Feb. 7, 2007) (holding that a claim that a doctor gave the wrong medication for hemorrhoids is a claim of negligence or malpractice, and does not support a finding of deliberate indifference).

As for his claim that he was transferred to another jail after filing a grievance, Plaintiff has not alleged that the Doctor had any personal involvement with his transfer, which is an essential element of a civil rights cause of action. *See Ashcroft v. Iqbal*, 556 U.S. at 678. Furthermore, an inmate has no constitutionally protected interest in serving his sentence at a particular institution, and an inmate has no right to be transferred or not transferred from one unit to another. *Olim v. Wakinekona*, 461 U.S. 238, 249–50 (1983); *Tighe v. Wall*, 100 F.3d 41, 42 (5th Cir.1996).

Plaintiff's claims against the Doctor should be dismissed.

## 2. Physician's Assistant and Nurses

Plaintiff claims generally that the Assistant failed to provide timely, adequate, or proper medical treatment. He asserts that Nurses who were on duty at the jail from April 7th to May 7th of 2011 failed to provide access to a doctor for treatment of the allergic reaction and prolonged his

suffering by delaying treatment.  On April 8th, after he developed blisters, he asked the nurse on duty to look at them and stated that he needed to see a doctor.  She told plaintiff that she would let the doctor know about the reaction in order to have his medication changed.  However, the following day, the nurse on duty tried to give him the same medication.  When he informed her of his reaction, she said that she was giving him the medicine on file, but she took note of his reaction and said that she would inform the doctor.  Although both nurses told him that they would either return with a different medication or he would be called to the nurse's office, neither happened, so Plaintiff asked a guard to take him after waiting two days.  It was not until several days later that he received the correct medication and medication to treat the allergic reaction. (Compl. at 9-10).

Plaintiff has not alleged that either the Assistant or the Nurses refused to treat him, ignored his complaints, or intentionally treated him incorrectly.  Plaintiff has instead alleged that there was a delay in his medical treatment. A delay in medical care is a constitutional violation only if there has been deliberate indifference which results in substantial harm. *Mendoza v. Lynaugh*, 989 F.2d 191, 195 (5th Cir. 1993).  While Plaintiff has alleged that he pain from the allergic reaction for several days and side effects that lasted three weeks, his allegations about the actions of these defendants are not sufficient to state a violation of his constitutional rights.  *See Lee v. Richland Parish Detention Center* 483 Fed. App'x 904, *1 (5th Cir. July 18, 2012) (holding that delays in administering medicine do not amount to a constitutional violation where there is no evidence that the defendants "delayed or refused medical treatment with subjective knowledge of facts from which an inference of substantial risk of serious harm could be drawn"), *citing Hare v. City of Corinth, Miss.*, 74 F.3d 633, 650 (5th Cir. 1996); *Williams v. O'Connor*, 2007 WL 654577, *3 (S.D. Tex. Feb. 27, 2007) (holding that deliberate indifference had not been shown where an inmate with high

8

blood pressure, diabetes, and anxiety was not monitored regularly and had cutbacks in his prescribed medication for pain and anxiety where he was seen once by a doctor, and no substantial harm was alleged); *Morrow v. Harris County Jail*, 2006 WL 1295647, *2 (S.D. Tex. May 11, 2006) (holding that medical staff were not deliberately indifferent when, after the plaintiff fell at the jail, he was given Tylenol for pain, but never saw a doctor until he was transferred to prison a month later, where there was no evidence that the delay resulted in substantial harm). Plaintiff has not alleged a cognizable cause of action against the Nurses and the Assistant with respect to his medical care. He has also failed to allege that these defendants were personally involved in his transfer. The claims against these should also be dismissed.

### D.  Municipal Liability

Plaintiff sues Dallas County, alleging that the county maintained a policy, custom or practice of deliberate indifference to his serious medical needs. Plaintiff also sues the Sheriff, the Warden, the chief medical officer, the Doctor, the Assistant, and the Nurses employed by Dallas County in their official capacities. An official capacity claim is merely another way of pleading an action against the entity of which the individual defendant is an agent. *See Hafer v. Melo*, 502 U.S. 21, 26–27 (1991);  *Kentucky v. Graham*, 473 U.S. 159, 165 (1985).

Municipalities, including counties, may be held liable under § 1983. *Hampton Co. Nat'l Sur., LLC v. Tunica County*, 543 F.3d 221, 224 (5th Cir. 2008). To hold a municipality liable under § 1983, however, plaintiffs must show an "underlying claim of a violation of rights,"as well as "a policymaker; an official policy; and a violation of constitutional rights whose 'moving force' is the policy or custom." *Cox v. City of Dallas*, 430 F.3d 734, 748 (5th Cir. 2005). The official policy requirement means that municipal liability under § 1983 is limited to action for which the munici-

pality is actually responsible." *Pembaur v. City of Cincinnati,* 475 U.S. 469, 479-80 (1986).  One incident does not show a policy or custom. *World Wide Street Preachers Fellowship v. Town of Columbia*, 591 F.3d 747, 753-54 (5th Cir. 2009); *Pineda v. City of Houston*, 291 F.3d 325, 329 (5th Cir. 2002).  Moreover, in general, "single constitutional violations" are insufficient to infer a custom or policy.  *Piotrowski v. City of Houston,* 237 F.3d 567, 581 (5th Cir. 2001).

Plaintiff has not alleged any official policy or custom on the part of Dallas County that violated his constitutional rights.  His single alleged incident of being given medicine that caused him an allergic reaction and a delay in receiving correct medication is insufficient to infer that Dallas County has an official customary policy or custom of failing to correctly medicate inmates at the county jail.  At most, Plaintiff has alleged that some of the medical staff were negligent.  Negligence is simply insufficient to impose liability under § 1983. *Brumfield v. Hollins*, 551 F.3d 322, 333 (5th Cir. 2008); *Oliver v. Collins*, 914 F.2d 56, 60 (5th Cir. 1990).  Plaintiff has therefore failed to state a plausible claim against Dallas County.

## IV.  RECOMMENDATION

Plaintiff's complaint should be **DISMISSED** with prejudice as frivolous pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b).  This dismissal will count as a "strike" or "prior occasion" within the meaning 28 U.S.C. § 1915(g).[3]

---

[3] Section1915(g), which is commonly known as the "three-strikes" provision, provides:

> In no event shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding under this section, if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.

SIGNED this 28th day of May, 2013.

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

## INSTRUCTIONS FOR SERVICE AND
## NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of these findings, conclusions and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

11